# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | | |
|---|---|---|
| PATRICIA STEPHENSON o/b/o J.C.S. | * | CIVIL ACTION NO. 07-1173 |
| VERSUS | * | |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED** and this matter **DISMISSED** with prejudice.

## BACKGROUND

On October 4, 2004, plaintiff, Patricia Stephenson, filed the instant application for Supplemental Security Income benefits on behalf of her minor son, J.C.S. (claimant). (Tr. 38, 45-46).[1] Plaintiff alleged that J.C.S. became disabled as of January 1, 1999, due to attention deficit hyperactivity disorder ("ADHD"), depression, behavior problems, asthma, and the inability to control his temper. (Tr. 71).[2] The claim was denied at the initial stage of the administrative

---

[1] The court refers to the minor by his initials in accordance with LR 5.82W and the E-Government Act of 2002.

[2] J.C.S. was born in March 1992. (Tr. 68).

process. (Tr. 23, 33-36). Accordingly, plaintiff requested and received an April 4, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 121-136). However, by decision dated July 17, 2006, the ALJ found that J.C.S. was not disabled under the Social Security Act. (Tr. 10-22). Plaintiff appealed the adverse decision to the Appeals Council. On November 24, 2006, the Appeals Council denied the request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8).

On July 16, 2007, Stephenson sought review before this court. She contends that the ALJ's determination that J.C.S.'s impairments do not functionally equal a listed impairment is not supported by substantial evidence.

## **STANDARD OF REVIEW**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or

evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW**

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, 110 Stat. 2105, which amended 42 U.S.C. §1382c(a)(3). Pursuant to this law, a child under the age of eighteen is considered disabled for purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(I) (1997).

The regulations set forth a three-step process for a child seeking benefits. First, the ALJ must determine if the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924. If the child is not so engaged, then the ALJ determines whether the child has a medically determinable impairment(s) that is severe. *Id*. An impairment(s) will not be deemed severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id*. Finally, an impairment(s) that is severe must also meet, equal, or functionally equal a listed impairment. *Id*.

## **DISCUSSION**

The ALJ determined that J.C.S. had not engaged in substantial gainful activity since the alleged onset date. (Tr. 16). He further found that J.C.S. suffers from severe impairments of depressive disorder and attention deficit hyperactivity disorder. *Id*. However, the ALJ concluded that these impairments neither met nor medically equaled a listed impairment. *Id*. Accordingly,

3

he proceeded to consider whether J.C.S.'s impairments functionally equaled a listed impairment.

The regulations provide that an impairment is functionally equivalent to a listed impairment if it results in an extreme limitation in one domain of functioning or marked limitations in two domains. 20 C.F.R. § 416.926a.[3] The domains include: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b).

The ALJ determined that J.C.S. exhibited less than marked limitations in the domains of "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "caring for yourself." (Tr. 17-22). He found no limitations in the two remaining domains. *Id*. Because the claimant did not have two marked limitations or one extreme limitation of functioning, the ALJ concluded that J.C.S. did not have an impairment that functionally equaled any of the impairments listed in Appendix 1, Subpart P, of Regulation No. 4. (Tr. 22).

The ALJ's decision tracks the findings of non-examining agency physician, William Berzman, Ph.D., as reflected in an April 14, 2005, Childhood Disability Evaluation Form. (Tr. 96-101). Dr. Berzman, in turn, relied upon a questionnaire completed by J.C.S.'s teacher, Harriett

---

[3] An "extreme" limitation is assessed when the impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). Day-to-day functioning may be very seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id*. An "extreme" limitation is equivalent to standardized test scores that are at least three standard deviations below the mean. *Id*.
  The term "marked" may be established when a claimant's impairments seriously interfere with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). "Marked" limitation also refers to a limitation that is more than "moderate," but "less than extreme." *Id*. A "marked" limitation is equivalent to standardized test scores that are at least two, but less than three standard deviations below the mean. *Id*.

Shoptaugh;[4] a January 10, 2004, mental status examination signed by Angela Harrison, M.D.; and a child function report completed J.C.S.'s mother. (Tr. 50-67, 102-112).[5] These records, plus later treatment notes from Dr. Harrison, provide substantial evidence to support the ALJ's decision.

For example, in the domains of "acquiring and using information," "attending and completing tasks," and "moving about and manipulating objects," Ms. Shoptaugh indicated that for each of 30 activities, J.C.S. exhibited less than serious problems. (Tr. 50-57).[6] In the domain of "health and physical well-being," Dr. Berzman (and the ALJ) found no limitation of functioning at all. (Tr. 22, 99).[7]

It is manifest that plaintiff's argument focuses upon the ALJ's findings regarding the domains of "interacting and relating with others" and "caring for yourself." (*See*, Pl. Memo., pg. 4). Plaintiff emphasizes that in the domain of "interacting and relating with others," J.C.S.'s teacher indicated that he suffered "serious" problems in two out of thirteen activities. (Tr. 53).[8]

---

[4] Evidence provided by teachers may be used to assess impairment severity and functional capacity. 20 C.F.R. § 416.913(d)(2); SSR-06-03p.

[5] The court observes that Dr. Berzman completed his evaluation the day after plaintiff forgot to take J.C.S. to a consultative mental examination. (Tr. 77-78).

[6] Except for an "obvious" problem with paying attention when spoken to, J.C.S. demonstrated no more than slight difficulty in any activity. *Id*.

[7] Although the administrative record indicates that J.C.S. suffers from asthma, there is no evidence that the condition significantly limits his activities. (Tr. 93). In fact, an examining physician noted no known problems during J.C.S.'s physical examination to play football. *Id*. J.C.S.'s mother also indicated that his physical activities were not limited. (Tr. 63).

[8] Specifically, she noted that he exhibited serious problems on a daily basis in seeking attention and expressing anger appropriately. *Id*. She also remarked that he experienced "obvious" problems with four other activities. *Id*.

Plaintiff further stresses that in the domain of "caring for yourself," J.C.S's teacher indicated that he experienced a "very serious" problem with taking his needed medication. (Tr. 55).[9] Plaintiff argues that if a serious problem is equated to a marked limitation, and/or if a very serious problem is equated to an extreme limitation, then Ms. Shoptaugh's observations should compel a finding that J.C.S. had a marked limitation in the domain of "interacting and relating with others" and an extreme limitation in the domain of "caring for yourself."

The fallacy with plaintiff's argument is that according to the Commissioner's Program Operations Manual System ("POMS") the ratings on the teacher questionnaire, Form SSA-5665-BK, do not translate directly into the ratings used on the Childhood Disability Evaluation Form, SSA-538. *See*, POMS DI 25205.030(5). There is no formula for converting the teacher questionnaire ratings into domain ratings. *Id*.[10] The questionnaire provides extremely useful information about the claimant's day-to-day functioning, but it must be considered in conjunction with other record evidence. *Id*.

In this case, the non-examining agency physician incorporated the teacher questionnaire and other evidence into his evaluation. As an agency physician, Dr. Berzman regularly reviews teacher questionnaires and is particularly well-suited to interpret and translate the questionnaire ratings into functional limitations (in conjunction with other record evidence). The fact that Ms. Shoptaugh identified serious (or worse) problems in three out of twenty-three activities in two domains does not render the questionnaire patently inconsistent with the agency physician's

---

[9] Ms. Shoptaugh observed, however, that J.C.S. had no serious problems in the remaining nine activities that comprise this domain. *Id*.

[10] The teacher's responses cannot be added up or otherwise mechanically converted into functional limitations. *Id*.

opinion, or by extension, the ALJ's findings. *See, L.G. v. Astrue*, 2008 WL 1751383 (E.D. Wis. Apr. 14, 2008) ("very serious" problem identified by teacher did not undermine ALJ's findings).

The court acknowledges that the instant record contains evidence that was not before the agency physician, e.g. Dr. Harrison's treatment records from February 2005 through April 2006 (Tr. 80-89) and the hearing testimony (Tr. 121-136). However, the evidence is equivocal, at best. Certainly, if some of the behaviors identified by J.C.S.'s mother were credited, the ALJ would have been compelled to assign greater functional impairment.[11] Here, however, the ALJ did not fully credit the plaintiff's statements regarding intensity, duration and the limiting effects of claimant's symptoms. (Tr. 17). This determination is supported by substantial evidence.

In this regard, the court observes that J.C.S.'s school records are not consistent with the extensive difficulties identified by plaintiff. Moreover, the records from claimant's treating physician do not reflect the severity alleged by plaintiff. Despite J.C.S.'s symptoms, Dr. Harrison opined that his prognosis was fair with continued medication and treatment. (Tr. 80). There is considerable evidence that J.C.S. did take his medication. For instance, on March 27, 2006, Dr. Harrison noted that J.C.S. had responded well to his new medication, and that his grades had improved. (Tr. 81). On December 15, 2005, Dr. Harrison observed that according to his mother, J.C.S. "continues to be playful & disruptive at times but overall manageable since meds. restarted." (Tr. 83). On June 24, 2005, Dr. Harrison wrote that J.C.S. was a "little better" and only occasionally disruptive and oppositional. (Tr. 85). Even J.C.S.'s mother acknowledged that her son did real well on his medication, but that after awhile he reverted because his body

---

[11] *See e.g.*, physically fighting with adults (Tr. 134); death threats (Tr. 132, 135); injuring newborn baby sibling (Tr. 135); school suspensions (Tr. 131); and wandering off (Tr. 129).

developed tolerance to the medication. (Tr. 128). Obviously, if J.C.S. can develop tolerance to prescribed medication, then he must be taking it on a sustained, regular basis.

In sum, the undersigned finds that the ALJ's determination that claimant was not eligible for benefits because his impairments did not meet, equal or functionally equal any impairment in Appendix 1 to Subpart P of Social Security Administration Regulations No. 4 is supported by substantial evidence and is free of legal error. *Id*. Accordingly,

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of September, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE